UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                          Chapter 7

GINA LAFORTE,                                    Case No. 14-42711-NHL

                    Debtor.

------------------------------------------------------------x

GREGORY MESSER, as Chapter 7 Trustee of the
estate of Gina LaForte,                          Adv. Pro. No. 14-01135-NHL

                    Plaintiff,

        v.

JOHN LAFORTE,

                    Defendant.

------------------------------------------------------------x

## <u>DECISION ON SUMMARY JUDGMENT</u>

### APPEARANCES

Rachel P. Stoian, Esq.                    Salvatore D. Compoccia, Esq.
LaMonica, Herbst & Maniscalco, LLP        378 Wilson Avenue
3305 Jerusalem Avenue, Suite 201          Staten Island, New York 10312
Wantagh, New York 11793                   *Attorney for Defendant*
*Attorney for Plaintiff*

NANCY HERSHEY LORD
United States Bankruptcy Judge

Gregory Messer, the Chapter 7 trustee (the "Trustee") of the estate of Gina LaForte (the "Debtor"), commenced this adversary proceeding against the Debtor's spouse, John Laforte (the "Defendant"), pursuant to New York Debtor & Creditor Law ("DCL") §§ 273, 273-a, 275, 276, 276-a, and 11 U.S.C. §§ 544 and 550.[1] The Trustee seeks to avoid and recover a transfer of the Debtor's real property located at 245 Valley Woods Road, Bolton Landing, New York 12814 (the "Real Property") to the Defendant (the "Real Property Transfer"), as well as an award of attorney's fees. The Trustee alleges that the Debtor, at the Defendant's direction, deeded the Real Property to the Defendant for no consideration, while she remained the sole obligor on the mortgage securing the Real Property. *See* Am. Compl., ECF No. 28

Before the Court is the Trustee's motion for partial summary judgment (the "Trustee's Motion") on the following five claims set forth in his Amended Complaint, dated May 22, 2015 (the "Amended Complaint"). *See* Decl. by Rachel P. Stoian, ECF No. 39; Trustee's R. 7056-1 Stat., ECF No. 40; Mem. of Law in Supp., ECF No. 41.

First, by the ninth, tenth, and twelfth claims for relief, the Trustee seeks to avoid the Real Property Transfer pursuant to DCL §§ 273, 273-a, and 275, on the basis that it was constructively fraudulent.

By the thirteenth claim for relief, the Trustee seeks to avoid the Real Property Transfer pursuant to DCL § 276 on the ground that the Debtor made the transfer with actual intent to hinder, delay, or defraud creditors.

By the fourteenth claim for relief, in the event that the Trustee prevails in his DCL § 276 claim, he also seeks to recover attorney's fees, pursuant to DCL § 276-a, on the basis that the Debtor and the Defendant possessed the requisite fraudulent intent.

---

[1] References to Title 11 of the United States code may appear throughout as the "Code"; references to the Federal Rules of Bankruptcy Procedure may appear as the "Rules."

The Defendant was not permitted to file opposition to the Trustee's Motion,[2] and for the reasons explained below, summary judgment is granted with respect to the Trustee's ninth, twelfth, and thirteenth claims; it is denied with respect to the Trustee's tenth and fourteenth claims.

## Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), and 157(b)(2)(A) and (H), and the Eastern District of New York Standing Order of Reference, dated August 28, 1986, as amended by Order dated December 5, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Rules.

## Background

### *The Real Property Transfer*

The Debtor, who is the Defendant's spouse, acquired the Real Property on July 7, 2004, when Joseph LaForte ("Joseph"), the Defendant's relative, transferred title to her by quitclaim deed.[3] Trustee's R. 7056-1 Stat. ¶¶ 10–11, ECF No. 40. On January 4, 2008, the Debtor executed a note in the amount of $184,500.00 in favor of Countrywide Bank, FSB ("Countrywide"), to be secured by the Real Property (the "Countrywide Note"). *Id.* at ¶ 14, ECF No. 40. A mortgage, dated January 4, 2008, was also prepared with respect to the Countrywide Note (the "Countrywide

---

[2] The Defendant originally failed to file opposition to the Trustee's Motion, and, at a hearing on February 25, 2016, requested additional time to do so. *See* Stip. & Order, ECF No. 46. Pursuant to a Stipulation and Order signed on March 5, 2016, the Trustee and the Defendant agreed that the Defendant would compensate the Trustee's counsel for having to appear at the hearing on February 25, and that, if the Defendant failed to timely tender that compensation, "the Defendant shall be deemed to be in default with respect to the Motion and shall not be permitted to file opposition to the Motion, and the Court may rule on the Motion accordingly." *Id.* The Defendant did not compensate the Trustee's counsel by the March 15, 2016 cutoff date, *see* Letter of Noncompliance, ECF No. 47, and therefore the facts alleged by the Trustee are deemed admitted. *See* Local Bankruptcy Rule 7056-1.

[3] As explained at the hearing on the Trustee's Motion on April 19, 2016, Joseph LaForte is the Defendant's half-uncle. Apr. 19, 2016 Tr. 10:5–10, ECF No. 49. At the same hearing, it was revealed that the Debtor and Defendant were separated before the Real Property Transfer. *Id.* at 10:23–24, ECF No. 49.

Mortgage" and, together with the Countrywide Note, the "Countrywide Note and Mortgage"), but it was neither executed by the Debtor nor recorded by Countrywide. *Id.* at ¶¶ 15–17, ECF No. 40.

The Countrywide Note and Mortgage were eventually assigned to Bank of America, N.A. ("BOA") after a merger between the companies (the "BOA Note" and "BOA Mortgage, and together, the "BOA Note and Mortgage"). On February 23, 2012, the Debtor and BOA executed a Loan Modification Agreement that amended and supplemented the BOA Note and Mortgage. *Id.* at ¶ 20, ECF No. 40. However, the BOA Mortgage was never recorded against the Real Property. *Id.* at ¶ 21, ECF No. 40.

The Debtor transferred the Real Property to the Defendant by quitclaim deed dated March 22, 2012, and recorded May 14, 2012 (the "Deed"). *Id.* at ¶ 24, ECF No. 40. The Deed and its recording cover page both reflect that the Debtor received no consideration in exchange for the transfer, and the Deed does not reflect that it is subject to any mortgage, lien, or encumbrance. *Id.* at ¶¶ 25–26, ECF No. 40. At her 341 Meeting, the Debtor testified that she transferred the Real Property to the Defendant at his direction, and conceded that she did so without receiving any consideration in exchange. Trustee's R. 7056-1 Stat. ¶¶ 27–28, ECF No. 40. The Debtor further testified that the Real Property was a summer home, where neither she nor the Defendant resided at the time of the Real Property Transfer or 341 Meeting. *Id.* at ¶29, ECF No. 40.

Shortly after he recorded the deed, on or about May 20, 2014, the Defendant listed on Zillow.com that the Real Property was for sale, with a list price of $279,000.00; that listing was removed on or about December 18, 2014. *Id.* at ¶ 35, ECF No. 40. In the same year, the Debtor's Chapter 7 petition estimated the fair market value of the Real Property to be $288,000.00, while the Warren County Tax Assessor assigned it a value of $305,500.00. *Id.* at ¶¶ 36–38, ECF No. 40.

*The State Court Action*

On or about February 21, 2012, Joseph and 4961 Lake Shore Drive, LLC (the "LLC") commenced an action in Supreme Court of the State of New York, County of Warren ("Supreme Court"), Index No. 56933/2012, against the Debtor and Bruce Carr ("Carr"), the attorney and escrow agent for the LLC (the "State Court Action"). Joseph alleged that the Debtor and Carr misappropriated proceeds from the sale of the LLC's assets, and sought $250,000.00 in damages. Trustee's R. 7056-1 Stat. ¶¶ 18–19, ECF No. 40. The Debtor did not enter an appearance or serve and file an answer in the State Court Action. *Id.* at ¶¶ 22–23, ECF No. 40.

On August 12, 2012, Carr filed a third-party complaint in the State Court Action (the "Third-Party Action") seeking indemnification from the Debtor and the Defendant. *Id.* at ¶¶ 30–31, ECF No. 40. The Debtor was served with the Third-Party Action summons and complaint on September 25, 2012, but the Debtor did not enter an appearance in that action, nor did she serve and file an answer to Carr's complaint. *Id.* at ¶ 32–33, ECF No. 40.

By Decision and Order dated May 13, 2014, the Supreme Court found the Debtor to be in default and granted summary judgment in favor of Joseph and the LLC in the State Court Action. *Id.* at ¶ 34, ECF No. 40. The State Court Action was ultimately resolved by Stipulation and Order of Discontinuance on September 18, 2015. Stip. & Order ¶4, ECF No. 57.

*The Debtor's Financial Condition*

The Debtor's gross annual income was $24,893.00 in 2012, and $29,890.00 in 2013. As of May 28, 2014 (the "Filing Date"), the Debtor had two dependents, aged twelve and fourteen. Trustee's R. 7056-1 Stat. ¶¶ 39–41, ECF No. 40.

As for the Debtor's various liabilities, the Debtor did not assign the BOA Note and Mortgage to the Defendant as part of the Real Property Transfer, and remained the sole obligor with respect to both as of the Filing Date. *Id.* at ¶ 42, ECF No. 40. The Debtor was unaware that

5

BOA had failed to record the BOA Mortgage with a balance of $179,913.00 as of the Filing Date.[4] *Id.* at ¶¶ 43, 44, ECF No. 40. The Debtor's Statement of Financial Affairs reflects that, subsequent to the Real Property Transfer and prior to the Filing Date, two judgments were entered against the Debtor in Supreme Court, Richmond County for credit card debts in matters titled *Capital One, N.A. v. Gina LaForte*, Index No. 2513/2013, and *Midland Funding v. Gina LaForte*, Index No. 4509/2013 (collectively, the "State Court Collection Judgments"). *Id.* at ¶ 45, ECF No. 40; SOFA, Decl., Ex. A, at 33, ECF No. 39-2. The Debtor's Amended Schedule of Unsecured Creditors shows general unsecured debts totaling $23,998.08, comprised of credit card and medical bills. Trustee's R. 7056-1 Stat. ¶ 46, ECF No. 40; Decl., Ex. C., ECF No. 39-4. According to the Trustee, these debts were incurred at the time of the Real Property Transfer, and remained unpaid as of the Filing Date.[5] Trustee's R. 7056-1 Stat. ¶ 46, ECF No. 40. Joseph and Carr were also scheduled as unsecured creditors based on the State Court and Third-Party Actions, respectively. *Id.* at ¶ 47, ECF No. 40. Additionally, on October 10, 2014, Carr filed a proof of claim against the Debtor's estate (the "Carr Claim"), by which he asserted a general unsecured claim of $125,000.00, premised on his claim in the Third-Party Action. *Id.* at ¶ 49, ECF No. 40.

*Procedural Background*

The Trustee commenced this adversary proceeding against the Defendant (the "Adversary Proceeding") on October 3, 2014. Trustee's R. 7056-1 Stat. ¶ 6, ECF No. 40. On May 4, 2015, the Court permitted Carr to intervene in this action as party-plaintiff, and authorized the two plaintiffs to file the Amended Complaint. *Id.* at ¶ 7, ECF No. 40. On November 14, 2016, the Court entered

---

[4] On September 30, 2016, the Court entered an Order providing that, to the extent that the Trustee obtains judgment in his favor in this adversary proceeding, the Real Property shall be turned over to and administered for the benefit of the estate, and the BOA Mortgage shall be deemed avoided pursuant to § 544(a) of the Code with the claim allowed as a late filed general unsecured claim. ECF No. 53.

[5] The creditors listed are: Capital One/Costco; Capital 1 Bank; DSNB's Macy's; MaryEllen Romano, MD; Nordstrom FSB; Richmond Pediatrics; Santander Bank, NA; Sears/CNBA. Trustee's R. 7056-1 Stat. ¶ 46, ECF No. 40.

a Stipulation and Order dismissing Bruce Carr from the case, amending the caption to remove him, and expunging the Carr Claim and waiving Carr's claim in the Adversary Proceeding. Stip. & Order ¶ 4, ECF No. 57.

## Legal Standard

Under Federal Rule of Civil Procedure 56, made applicable to this proceeding by Bankruptcy Rule 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). In ruling on a motion for summary judgment, a court looks to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," *Celotex*, 477 U.S. at 322 (quoting Fed. R. Civ. P. 56(c)), and reviews the evidence in the light most favorable to the non-moving party, with all inferences drawn in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

While the initial burden is on the movant to demonstrate the absence of a genuine dispute of material fact with particular cites to the record, *Celotex*, 477 U.S. at 323; *Marvel*, 310 F.3d at 286, the non-moving party cannot defeat summary judgment by merely casting doubt on some of these facts, *see Kulak*, 88 F.3d at 71. The non-moving party must point to disputed facts whose determination would affect the outcome of the case such that a reasonable trier of the fact could find in favor of the non-moving party. *Anderson*, 477 U.S. at 247–48; *Matsushita*, 475 U.S. at

586–87. Here, however, pursuant to a stipulation, the Defendant gave up the opportunity to submit opposition to the Trustee's Motion, and is therefore without the ability to identify disputed facts, if any.[6]

## Discussion

### 1.  Constructive Fraud: Ninth, Tenth, and Twelfth Claims for Relief

Section 544(b)(1) of the Code provides, in relevant part, that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title." 11 U.S.C. § 544(b)(1).[7] The Trustee seeks to use that provision to avoid the Real Property Transfer as constructively fraudulent pursuant to DCL §§ 273, 273-a, and 275. Once avoided, the Trustee seeks to recover the Real Property Transfer from The Defendant pursuant to § 550 of the Code.

Avoiding a transfer as constructively fraudulent under the New York law provisions raised here requires a showing that the transfer was made without fair consideration, and that (1) the Debtor was insolvent or was rendered insolvent by the transfer, DCL § 273; (2) the Debtor is a defendant in an action for money damages and has failed to satisfy the judgment, § 273-a; or (3) the Debtor intended or believed that it would incur debts beyond its ability to pay when the debts matured, § 275. *See In re Vargas Realty Enters., Inc.*, 440 B.R. 224, 240 (S.D.N.Y. 2010); *In re Nirvana Rest. Inc.*, 337 B.R. 495, 501 (S.D.N.Y. 2006). Under each of the three sections, the plaintiff must show that the debtor did not receive "fair consideration." *See* DCL §§ 273, 273-a,

---

[6] *See supra* note 2.

[7] The proofs of claim filed against Debtor's estate reflect general unsecured debts incurred prior to the Real Property Transfer that remain unpaid as of the Filing Date, including those by: American InfoSource LP for $886.62 and $2,416.93; PYOD, LLC for $6,789.35; and Jefferson Capital Systems, LLC for $1,902.65. Trustee's R. 7056-1 Stat. ¶ 48, ECF No. 40.

275; *Nirvana Rest.*, 337 B.R. at 501 (citing *United States v. McCombs,* 30 F.3d 310, 323 (2d Cir. 1994)).

*"Fair Consideration"*

"Fair consideration" is defined in DCL § 272, which provides:

> Fair consideration is given for property, or obligation,
>
> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

DCL § 272. Accordingly, fair consideration is given when three criteria are met: (1) in exchange for the debtor's property, the recipient either conveys property or discharges an antecedent debt; (2) the debtor receives the "fair equivalent" of the property conveyed; and (3) the exchange is undertaken in good faith. *In re Sharp Int'l Corp.*, 403 F.3d 43, 53–54 (2d Cir. 2005) (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058–59 (2d Cir. 1995)). With respect to the first two elements, "[w]hile dollar-for-dollar equivalence is not required, the value of the consideration may not be '"disproportionately small" as compared to the value of the transferred property.'" *Schneider v. Barnard*, 508 B.R. 533, 549 (E.D.N.Y. 2014) (quoting *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 377 (S.D.N.Y. 2003)).

Here, proportionate consideration might be determined by the range of potential fair market values that have been provided for the Real Property: the Defendant's proposed sale price of $279,000.00, the Debtor's estimate of $288,000.00, and the Tax Assessor's assessment of $305,500.00. *See* Trustee's R. 7056-1 Stat. ¶¶ 35–37, ECF No. 40. As noted above, however, the Trustee has established through the Deed and its recording cover page, as well as the Debtor's 341

9

Meeting testimony, that the Defendant did not provide the Debtor with *any* consideration for the Real Property. Providing nothing of value in exchange for the Real Property is beyond "disproportionately small," and in no way a "fair equivalent," even if the lowest value provided for the Real Property is used as a benchmark for comparison. *See id.* at ¶¶ 25, 28, ECF No. 40. Moreover, the Debtor appears to have emerged from the transfer with a significant net loss. As the Trustee has shown, the Debtor retained the burden of the BOA Mortgage with a balance of $179,913.00, but lost the asset securing it. *Cf. United States v. Alfano*, 34 F. Supp. 2d 827, 847 (E.D.N.Y. 1999) ("[W]here the property was taken subject to the mortgage, or where transferors received nothing for their equity, fair consideration was not given."). Therefore, as the Trustee has established that nothing was conveyed in exchange for the Real Property, the first two elements have not been met, and the Defendant did not provide fair consideration as defined by DCL § 272.

*Ninth Claim: DCL § 273*

Having established a lack of fair consideration, each of the unique elements of the constructive fraud provisions may be considered, beginning with DCL § 273, which states that a transfer may be avoided where it is also established that the transferor was insolvent at the time of the transfer, or rendered insolvent thereby. DCL § 273. The Court finds that the Trustee has met his burden with respect to this element. DCL § 271 defines "insolvency" as "when the present fair salable value of [a person's] assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." DCL § 271(1). But, "[o]nce it is established that a debtor transferred property without fair consideration, [] the law presumes that the transfer rendered him insolvent" and "[t]he burden then shifts to the transferee to overcome that presumption by demonstrating the debtor's continued solvency after the transfer." *In re Corcoran*, 246 B.R. 152, 163 (E.D.N.Y. 2000). As it is undisputed that the Defendant did not provide any kind of consideration, and therefore that fair consideration was lacking, the Trustee is

entitled to a presumption that the Real Property Transfer rendered the Debtor insolvent. Trustee's R. 7056-1 Stat. ¶¶ 25–27, ECF No. 40; *In re Corcoran*, 246 B.R. at 163. Since the Defendant is precluded from overcoming the presumption, the Trustee is entitled to summary judgment on his ninth claim pursuant to DCL § 273.

Furthermore, even without the benefit of the presumption, the Trustee has presented sufficient facts to establish the Debtor's insolvency. The Real Property Transfer removed the Real Property—valued at approximately $279,000.00—from the Debtor's assets while leaving Debtor with larger liabilities such as the BOA Mortgage, the State Court Action default judgment, and the State Court Collection Judgments—all of which total over $450,000.00. Trustee's R. 7056-1 Stat. ¶¶ 14, 19, 26, 42, 44, 47, ECF No. 40. Against these liabilities, the Debtor's income in 2013 was $29,890.00. *Id.* at ¶ 40, ECF No. 40. Additionally, the Debtor's scheduled unsecured claims show additional obligations incurred at the time of the Real Property Transfer that were unsatisfied as of the Filing Date. *Id.* at ¶ 46, 48, ECF No. 40. For these reasons, the Trustee would be entitled to summary judgment pursuant to DCL § 273 with or without reliance on the presumption of insolvency.

*Tenth Claim: § 273-a*

The Trustee also seeks to avoid the Real Property Transfer as constructively fraudulent pursuant to DCL § 273-a, which provides that:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

DCL § 273-a.

In order to prevail on a claim under DCL § 273-a, a plaintiff must establish that: (1) the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment. *Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006); *see also First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 871 F. Supp. 2d 103, 118 (E.D.N.Y. 2012); *Neshawat v. Salem*, 365 F. Supp. 2d 519, 518–21 (S.D.N.Y. 2005).

The Trustee is not entitled to summary judgement on this claim. While the first two elements have been established—the Real Property Transfer lacked fair consideration, and the Debtor was a defendant in an action for money damages (the State Court Action)—the evidence in the record is insufficient to establish the third element, that a resulting judgment has gone unsatisfied. "The existence of an unsatisfied judgment is an essential element of [an action under § 273-a]." *Frybergh v. Weissman*, 145 A.D.2d 531, 531–32 (N.Y. App. Div. 2d Dep't 1988) (citing *Cohan v. Misthopoulos*, 118 A.D.2d 530 (N.Y. App. Div. 2d Dep't 1986)). The judgment that the defendant has failed to satisfy must be a "final judgment." *See* DCL § 283-a ("after a final judgment for the plaintiff"); *see also In re Yerushalmi*, 440 B.R. 24, 28–29 (E.D.N.Y. 2010) ("[A] 'fair working definition' of finality is that 'a "final" order or judgment is one that disposes of all of the causes of action between the parties in the action or proceeding and leaves nothing for further judicial action apart from mere ministerial matters.'" (quoting *Burke v. Crosson*, 85 N.Y.2d 10, 15 (1995))). Further, such a judgment is "unsatisfied" to the extent that the defendant has failed to pay it "when entered." *Republic Ins. Co. v. Levy*, 329 N.Y.S.2d 918, 921 (Sup. Ct. Rockland Cty. 1972). Here, however, the Trustee has not provided evidence sufficient to meet these requirements. To satisfy this element, the Trustee relies on the Decision and Order granting summary judgment in the State Court Action, Mem. of Law 15, ECF No. 41, but only the Decision and Order itself

12

was included with the Trustee's Motion. *See* Decl., Ex. O, ECF No. 39-16. While that document shows that the sole claim for money damages against the Debtor was resolved on summary judgment, which perhaps satisfies finality for these purposes, it does not offer proof of entry of the judgment. *See* N.Y. C.P.L.R. 5016(a) ("A judgment is entered when, after it has been signed by the clerk, it is filed by him."). Nor, for that matter, has the Trustee made any allegations as to the finality or entry of the judgment. *See* Trustee's R. 7056-1 Stat. ¶ 34, ECF No. 40; Mem. of Law 15, ECF No. 41. Since there is an open question as to whether a final judgment remains unsatisfied, the Court cannot grant summary judgment with respect to the Trustee's tenth claim pursuant to DCL § 273-a.[8]

### Twelfth Claim: § 275

The Trustee also seeks to avoid the Real Property Transfer as constructively fraudulent by his twelfth claim, under DCL § 275, which permits the avoidance by "present and future creditors" of a transfer made without "fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature." DCL § 275. Under this provision, a transfer may be avoided where "the property remaining after the conveyance is insufficient to pay [the transferor's] probable liabilities on existing debts as they become mature." *Fromer v. Yogel*, 50 F. Supp. 2d 227, 246 (S.D.N.Y. 1999); *see also In re Flutie N.Y. Corp.*, 310 B.R. 31, 35 (Bankr. S.D.N.Y. 2004).

The Trustee has shown that, after the Real Property Transfer, the Debtor's remaining property would be insufficient to pay her debts. The Debtor's income in the year of the Real Property Transfer and the next did not rise above $30,000.00. The Debtor's schedules highlight

---

[8] It is possible that the State Court Collection Judgments entered against the Debtor, to the extent that they appear to be unsatisfied money judgments, would satisfy the elements required under § 273-a. The precise factual circumstances surrounding these actions and the resulting judgments are unclear, however, and, in any event, the Trustee did not rely on them to advance his § 273-a claim.

13

that she stopped paying at least four credit cards just prior to the Real Property Transfer, and two in the months that followed. Trustee's R. 7056-1 Stat. ¶¶ 39–40, ECF No. 40. The State Court Action claim for $250,000.00 also arose just two weeks before the Real Property Transfer, and she remained obligated on the BOA Mortgage. *Id.* at ¶¶ 46, 48, ECF No. 40. Taken together, these facts show that the Debtor would not be able to satisfy her debts without the Real Property.

Accordingly, the Trustee is granted summary judgment with respect to his twelfth claim to avoid the Real Property Transfer pursuant to DCL § 275.

*11 U.S.C. § 550*

Having determined that the Trustee is entitled to summary judgment on his claims under DCL §§ 273 and 275, the next question is whether he may recover the Real Property pursuant to Code § 550(a)(1). Section 550(a)(1) provides that, "to the extent that a transfer is avoided under section 544 . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). The Trustee is entitled to summary judgment on this issue. The entirety of the Real Property Transfer is avoidable, and the Real Property may be recovered from the Defendant, who is undisputedly the initial transferee.

## 2. Actual Fraud: Thirteenth Claim for Relief

The Trustee has also moved for summary judgment on his thirteenth claim, pursuant to Code § 544(b)(1) and DCL § 276, to avoid the Real Property Transfer on the basis that it was undertaken with actual intent to hinder, delay, or defraud creditors. DCL § 276 provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

DCL § 276.

In order to prevail under § 276 and avoid a transfer as actually fraudulent, a plaintiff must establish that: "(1) the thing disposed of must be of value, out of which the creditor could have realized a portion of his claim; (2) it must be transferred or disposed of by the debtor; and (3) it must be done with intent to defraud." *In re Kovler*, 249 B.R. 238, 243 (Bankr. S.D.N.Y. 2005) (quoting *In re Montclair Homes, Inc.*, 200 B.R. 84, 96 (Bankr. E.D.N.Y. 1996)), *supplemented*, 253 B.R. 592 (Bankr. S.D.N.Y. 2000), *and corrected*, 329 B.R. 17 (Bankr. S.D.N.Y. 2005). It is the Debtor's actual intent to defraud her creditors that is relevant to this inquiry, not the Defendant's. *Schneider*, 508 B.R. at 546 (holding that § 276 required only proof of the transferor's fraudulent intent, whereas transferee's intent is relevant only to a good faith defense). The Trustee also bears the burden of proving "actual intent" by clear and convincing evidence. *McCombs*, 30 F.3d at 327–28.

The Trustee has met his burden with respect to the first two *Kovler* prongs. The Real Property Transfer was the Debtor's transfer of her own valuable asset—along with almost $100,000.00 equity out of which creditors could have realized all or a portion of their claims—to the Defendant. Therefore, the Court is left to determine whether the Debtor possessed the fraudulent intent within the meaning of DCL § 276, despite the fact that "[o]rdinarily, the issue of fraudulent intent cannot be resolved on a motion for summary judgment," because it is a "factual question involving the parties' states of mind." *Golden Budha Corp. v. Canadian Land Co. of Am., N.V.*, 931 F.2d 196, 201–02 (2d Cir. 1991).

In light of this difficulty, and because fraudulent intent is rarely susceptible to direct proof, courts look to badges of fraud in order to determine if actual fraud has taken place. *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983). The "badges" are as follows:

 (1) the lack or inadequacy of consideration;
 (2) the family, friendship or close associate relationship between the parties;
 (3) the retention of possession, benefit or use of the property in question;

(4) the financial condition of the parties sought to be charged both before and after the transaction in question;

(5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6) the general chronology of the events and transactions under inquiry.

*In re Hypnotic Taxi LLC*, 543 B.R. 365, 374 (Bankr. E.D.N.Y. 2016) (citing *Kaiser*, 722 at 1582–83 (2d Cir. 1983); *In re Boyer*, 328 F. App'x 711, 715 n.2 (2d Cir. 2009)). "The existence of a badge of fraud is merely circumstantial evidence and does not constitute conclusive proof of actual intent. However, the existence of several badges of fraud can constitute the requisite clear and convincing evidence of actual intent [to defraud]." *In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005) (citation omitted); *see also In re Singh*, 434 B.R. 298, 311–12 (Bankr. E.D.N.Y. 2010) (quoting *Actrade*, 337 B.R. at 309).

In this case, virtually all of the badges of fraud are present:

(1) *The lack or inadequacy of consideration:* It is undisputed that no consideration was provided for the Real Property Transfer. *See* Trustee's R. 7056-1 Stat. ¶ 25, ECF No. 40.

(2) *The family, friendship or close associate relationship between the parties:* The Debtor and theDefendant were married—albeit separated—at the time of the Real Property Transfer. Trustee's R. 7056-1 Stat. ¶ 10, ECF No. 40.

(3) *The retention of possession, benefit or use of the property in question:* The Trustee's only argument with respect to this badge was that the Debtor remained the sole obligor with respect to the BOA Mortgage, which does not demonstrate the Debtor's continued possession, benefit or use. Mem. of Law. 20–21, ECF No. 41. The Trustee could only assume that the Defendant permitted the Debtor to continue enjoying the Real Property

as a summer home, but that does not conclusively establish this badge, because the inferences are taken in favor of the non-movant on summary judgment. *Id.*

(4) *The financial condition of the party sought to be charged both before and after the transaction in question:* As discussed above, the Trustee has established that the Real Property Transfer left the Debtor insolvent. The Debtor made minimal income while supporting her dependent children, and lost a significant asset through the Real Property Transfer.

(5) *The existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and* (6) *The general chronology of the events and transactions under inquiry*: The series of events presented by the Trustee strongly suggest that the Real Property Transfer was meant to shield the Real Property from being used to satisfy the Debtor's mounting obligations. The Debtor stopped paying several credit cards prior and subsequent to the Real Property Transfer; she also became a defendant in, and defaulted on, the State Court Action around that time. The Defendant subsequently listed the Real Property for sale, and one week later the Debtor filed her Chapter 7 petition in this Court.

Accordingly, all but one of the badges—whether the Debtor continued to benefit from the Real Property—are present in this case. Though the Court takes all inferences against the Trustee, the foregoing analysis indicates, by clear and convincing evidence, that the Real Property Transfer was undertaken by the Debtor with actual fraudulent intent. *See, e.g.*, *Singh*, 434 B.R. at 311–12.

Consequently, the Trustee is entitled to summary judgment on his thirteenth claim pursuant to DCL § 276.

17

### 3.  Attorney's Fees: Fourteenth Claim for Relief

With his fourteenth claim for relief, pursuant to DCL § 276-a, the Trustee seeks to recover attorney's fees. "Section 276-a states that attorney['s] fees should be awarded when a conveyance 'is found to have been made by the debtor *and received by the transferee with actual intent,* as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors.'" *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).[9] Once it is established that both the transferor and the transferee engaged in the contested transaction with actual intent to defraud, the Trustee is then entitled "to a judgment for the full amount of attorney['s] fees necessarily expended to obtain a judgment." *In re Kovler*, 253 B.R. 592, 598 (Bankr. S.D.N.Y. 2000).

In *Carey v. Crescenzi*, the Second Circuit explained that "§ 276-a attorney['s] fees may not be awarded against a defendant, who is grantee of a fraudulent conveyance, without a specific finding that he was aware of and participated in the actual fraud." *Crescenzi*, 923 F.2d at 20; *accord In re Hickey*, 168 B.R. 840, 843–46 (Bankr. W.D.N.Y. 1994) (holding that a finding of actual fraudulent intent on the part of a husband who transferred the majority of his net worth to his wife,

---

[9] The full text of 276-a reads:

> In an action or special proceeding brought by a creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, in which action or special proceeding the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall recover judgment, the justice or surrogate presiding at the trial shall fix the reasonable attorney's fees of the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors in such action or special proceeding, and the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall have judgment therefor against the debtor and the transferee who are defendants in addition to the other relief granted by the judgment. The fee so fixed shall be without prejudice to any agreement, express or implied, between the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors and his attorney with respect to the compensation of such attorney.

DCL § 276-a.

for no consideration, at a time when he was being pursued by creditors, was insufficient to support an award of attorney's fees against the wife under DCL § 276-a). In other words, for the purpose of awarding attorney's fees, the Court may not infer the Defendant's intent from circumstantial evidence, but must be able to make a finding with respect to the Defendant's "actual knowledge of the circumstances" that made the conveyance fraudulent. *Cadle Co. v. Newhouse*, 20 F. App'x 69, 76 (2d Cir. 2001) (citing *Crescenzi*, 923 F.2d at 21).

In support of his DCL § 276-a claim, the Trustee offers an analysis akin to the badges of fraud undertaken to establish the Debtor's actually fraudulent intent. *See* Mem of Law 20–23, ECF No. 41. The Trustee explains that the Debtor engaged in the Real Property transfer at the Defendants direction, that the Defendant was "likely" aware of the "$250,000.00 state court action," and that he took title to the Real Property without assuming any of its associated obligations. Mem. of Law 24, ECF No. 41; Apr. 19 Tr. 31:6–7, ECF No. 49. At best, this evidence established imputed, but not actual, fraud. *See In re Khan*, No. 10-46901-ess, Adv. Pro. No. 11-0120-ess, 2014 WL 10474969, at *48 (Bankr. E.D.N.Y. Sept. 30, 2014) ("The court must make an explicit finding of actual intent to defraud; imputed fraud does not satisfy § 276-a." (quoting *Crescenzi*, 923 F.2d at 21)). That the Defendant directed the transfer under those circumstances may be sufficient to support an inference of his knowledge and participation, but it does not establish either conclusively. What is missing is evidence showing that his action was taken not just in the context of those circumstances, but in light of them. *See Crescenzi*, 923 F.2d at 21 ("If [the transferees] were unaware of the[ transferor's] intent to defraud the plaintiff . . . then they could not be charged here with actual intent to defraud under § 276-a."). Accordingly, summary judgment on the Trustee's fourteenth claim, pursuant to DCL § 276-a, is denied.

**Conclusion**

For the foregoing reasons, with regard to the ninth, twelfth, and thirteenth claim in the amended complaint, to avoid the Real Property Transfer pursuant to Code § 544(b)(1), DCL §§ 273, 275, 276, and Code § 550, the Trustee's Motion is granted. With respect to the tenth claim, pursuant to DCL § 273-a, to avoid the Real Property Transfer, and the fourteenth claim, seeking to recover attorney's fees pursuant to DCL § 276-a, the Trustee's Motion is denied.

A separate order will issue.



**Dated: March 30, 2017**
**Brooklyn, New York**

_Nancy Hershey Lord_
**Nancy Hershey Lord**
**United States Bankruptcy Judge**